IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CHRISTIANE MILLER, and on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>GRAND CANYON UNIVERSITY, INC, et al.,<br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§  Civil Action No. 4:20-cv-00652-P<br>§<br>§<br>§<br>§<br>§ |

**OPINION AND ORDER**

Plaintiff Christiane Miller ("Miller") brings this case on behalf of herself and a putative class composed of "[a]ll Grand Canyon University students who have been enrolled in an online professional graduate degree or certificate program that is not accredited in the state where they are employed or, if not employed, where they reside." Comp. at ¶ 54. Miller submits claims of fraudulent omission, fraudulent misrepresentation, unjust enrichment, violations of the Racketeer Influence and Corrupt Organizations ("RICO") Act, the Arizona RICO Act, and the Arizona Consumer Fraud Act ("ACFA") against Defendants Grand Canyon University, Inc. ("GCU") and Grand Canyon Education, Inc. ("GCE") (collectively, "Defendants"). *Id.* at 23–47.

To progress, Miller must obtain class certification, a matter the Court considers today in her Motion to Certify. ECF No. 40. Having considered Miller's Motion to Certify,

GCU's Response (ECF No. 42), Miller's Reply (ECF No. 46), the record, and applicable law, the Court finds that Miller's Motion to Certify should be and hereby is **DENIED.**

## BACKGROUND

### A. Grand Canyon University's Structure

GCU, headquartered in Arizona and incorporated in Delaware, is a primarily online university whose students live throughout the United States. Comp. at ¶ 21. Over half of GCU's 80,000 online students are working adults seeking masters or doctoral degrees. *Id*. at ¶ 23. Many of these students must graduate from accredited universities and programs to enter their chosen field, particularly those interested in education or medicine. *Id*. There is a distinction to be made between university and programmatic accreditation; for example, a university may be generally accredited while lacking accreditation for one of its post-graduate level programs. *Id*. at ¶ 24.

According to Miller, issues abound within the way GCU operates that leads to it being unable to acquire accreditation for some of its programs in several states. *Id*. at ¶ 31. These issues include the following:

- GCU professors are often compensated far less than at other universities, often ensuring that their GCU employment is only part-time. As a result of their low pay and the part-time nature of their employment, GCU professors "are not able to complete the tasks expected of faculty by many accrediting agencies, such as: preparation of proper course outlines and materials; delivering tailored lectures and answering student questions; and assisting

students with the material at regularly-scheduled times." *Id.* at ¶ 25.

- "GCU also does not provide students and faculty with the level of resources deemed essential by many accrediting agencies. In addition to poor faculty pay, and negligible benefits, training and support does not meet minimum standards. Class materials are also substandard, often amounting to links to Internet-based websites and information. 'Hands on' work is impossible or, at the very least, much less of an emphasis than in most accredited programs." *Id.* at ¶ 26.

- "Testing and other performance evaluations are not reputable at GCU. Many students complain that grading in courses is random with the main emphasis on keeping students at GCU, even when they do not show knowledge of the coursework." *Id.* at ¶ 27.

Like many universities, GCU also makes use of recruiters (called "advisors") whose job it is to find candidates, discuss GCU's programs and benefits, and encourage them to apply to GCU. *Id.* at ¶ 34. Some of these advisors work for GCE, which allows them to receive "incentive compensation to sign up more students" that they would not be permitted to receive if they worked for GCU. *Id.* at ¶ 39. GCU's annual report takes the position that GCE is not a university affiliate—a position Defendants embraced in a hearing before the Court. *Id.*; ECF No. 36.

**B.     The dispute between Miller and GCU**

Miller, a Texas citizen, began searching for Texas-accredited online graduate degree programs approximately two years ago. Comp. at ¶¶ 42–43. After completing an online

3

form, a GCE advisor named Nicholas Abruzesse contacted Miller. *Id*. at ¶ 44. The two engaged in several phone calls where Abruzesse assured Miller that "she could achieve her goal of becoming a certified teacher if she signed up with GCU" and "informed [her] that GCU's graduate programs were accredited in Texas." *Id*. Miller alleges that, based on Abruzesse's assurances, she enrolled and began taking courses with GCU. *Id*. at ¶¶ 48–49.

A few months after she began taking courses, Miller alleges that she learned Abruzesse's representations were false during a conversation with her field experience counselor, Sara. *Id*. at ¶ 50. When Miller told Sara that she wanted to be licensed in Texas, Sara told her that "the GCU program that Mr. Abruzesse had enrolled her in could not lead to a job in Texas like she had been assured." *Id*. Upset, Miller suspended her pursuit of a degree from GCU and claims that she "would not have enrolled in GCU if she had not been misled about the program." *Id*. at ¶¶ 51–52. Defendants contend that she left GCU for a reason entirely unrelated to the program—that GCU expelled her because she failed to disclose her criminal history as part of an FBI background check required by her education curriculum. Campbell Declr. at ¶ 23, ECF No. 42-1.

C. **Miller sues and moves for class certification**

Miller later filed the instant action on behalf of a putative class of "[a]ll Grand Canyon University students who have been enrolled in an online professional graduate degree or certificate program that is not accredited in the state where they are employed or, if not employed, where they reside." *Id*. at ¶ 54. Miller alleges a variety of state and federal common law and statutory fraud and RICO claims. *Id*. at 23–47. Miller claims that

4

approximately 50,000 GCU students sustained injuries sufficiently similar to hers to be included in the class. Mot. Cert. at 9.

## LEGAL STANDARD

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Federal Rule of Civil Procedure 23 governs whether a proposed class falls within this limited exception. The party seeking class certification "bear[s] the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). Here, Miller "must affirmatively demonstrate h[er] compliance with the Rule—that is, [s]he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, and so on." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir. 2020) (internal quotations omitted) (emphasis in original).

Rule 23 requires the district court to put the Rule's application through "rigorous analysis." *Id.* This means that "Rule 23 does not set forth a mere pleading standard" and often requires the district court "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350–51. The Court cannot take the parties at their word, but instead must review the evidence and consider the parties' claims and defenses. *Id.* Indeed, the Court's duty is to

> understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination. If some of the determinations cannot be made without a look at the facts, then the judge must undertake that investigation.

5

*Chavez*, 957 F.3d at 546. Next, the district court must "detail with specificity its reasons" behind its conclusions, "explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses," and "articulat[e] why the issues are [or are not] fit for classwide resolution." *Id*. This is no rubber-stamp procedure.

"This rigorous analysis mandate is not some pointless exercise," but protects due process of law. *Id.* at 547. "It is no secret that certification can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Id.* Moreover, after certifying a class, any judgment in this case will bind absent class members for good or ill. *Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 454 (5th Cir. 2016). Thus, the "existence of a class fundamentally alters the rights of present and absent members." *Chavez*, 957 F.3d at 547. For these reasons, the Court's analysis commands an exacting and laborious effort.

## ANALYSIS

"To obtain class certification, parties must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 252 (5th Cir. 2020) (internal brackets omitted) (citations omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Miller argues for certification under both Rules 23(b)(2) and (b)(3).

Defendants oppose class certification on numerous grounds, arguing that Miller's proposed class does not satisfy the prerequisites under Rules 23(a), 23(b)(2) or 23(b)(3); that the class is unascertainable; and that Miller sets forth a theory of fraud that lacks any basis in fact or "logical coherence." Resp. at 5. Because Miller failed to prove the

requirements under Rules 23(a), 23(b)(2), and 23(b)(3), her motion to certify is hereby **DENIED.**

**A.     Rule 23(a)**

Rule 23(a) imposes four prerequisites on class certification. The prerequisites are as follows:

> A.   the class is so numerous that joinder of all members is impracticable;
>
> B.   there are questions of law or fact common to the class;
>
> C.   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> D.   the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These four threshold conditions are "commonly known as numerosity, commonality, typicality, and adequacy of representation." *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (quotation omitted). The Court addresses each element in turn.

   1.     <u>Numerosity</u>

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although there is no set number of class members that renders joinder impossible, "[t]he Fifth Circuit has implied . . . a class of over forty people will suffice." *Abboud v. Agentra, LLC*, No. 3:19-CV-00120-X, 2020 WL 5526557, at *3 (N.D. Tex. Sept. 14, 2020) (Starr, J.) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)). Other facts which may be relevant to the numerosity inquiry include "the geographical dispersion of the class, the ease with which

7

class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting commonsense assumptions can support a finding of numerosity); *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. July 9, 2013). Here, the proposed Class has tens of thousands of members spread throughout the nation. *See* Comp. at ¶ 57. Therefore, joinder is impracticable, satisfying the numerosity requirement.

2. Commonality

Rule 23(a)(2) states that there must be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Before 2011, courts sometimes described the commonality threshold as "not high." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). But in 2011, the Supreme Court "heightened the standards for establishing commonality under Rule 23(a)(2)." *Stukenberg*, 675 F.3d at 839 (*citing Dukes*, 564 U.S. at 350).

Current law requires Miller to show that there is at least one common question that will resolve a central issue in each class member's claims. "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original). Thus, common questions do not cut it—the common questions must generate common answers that resolve issues central to the dispute. Under this heightened standard, the Court must review both the similarities and dissimilarities among class members' claims. *Stukenberg*, 675 F.3d at 842–44; *see also Dukes*, 654 U.S. at 351 ("Dissimilarities within the proposed class are what

8

have the potential to impede the generation of common answers."); *Chavez*, 957 F.3d at 547–49.

Turning to the proposed class, Miller offers six common questions of law and fact. L.R. N.D. TEX. 23.2 (requiring briefs accompanying a motion to certify to set out specific factual allegations concerning the "questions of law and fact that are common"). They are as follows:

- Does GCU knowingly enroll students in professional programs which are unaccredited in the student's state?
- Do GCU's practices amount to fraud or misrepresentation?
- Did GCU violate federal law or regulations?
- Does Arizona Law apply?
- Were Defendants unjustly enriched as a result of their improper conduct?
- What type and level of damages and equitable remedy is the class entitled to?

Mot. Cert. at 11. While no doubt these are common *questions*, Miller must show that a class action would "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original).

Miller's alleged commonalities fail that test. "Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke." *Stukenberg*, 675 F.3d at 840 (emphasis in original). Indeed, to determine the crucial questions resolving liability, it is "necessary for the court to probe behind the

pleadings" and dig into the "merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51.

Having engaged in the above, the Court finds that Miller's common questions are not common at all, as providing answers to them would fail to produce any evidence for the putative class's claims. Miller's putative class suffers from the same flaw as the putative class in *Wal-Mart Stores, Inc. v. Dukes*. In *Dukes*, the plaintiffs alleged Walmart's discretionary employment promotions discriminated against women. *Id.* at 353. The plaintiffs moved to certify the class, alleging the common question of "whether Wal-Mart's female employees nationwide were subjected to a single set of corporate policies . . . that may have worked to unlawfully discriminate against them in violation of Title VII." *Id.* at 347. But this question was superficial. The crucial question was specific to each class member: what reasons lie behind each woman's failure to be promoted? As Justice Scalia aptly noted, the plaintiffs "sue[ed] about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.* (emphasis in original). The plaintiffs ignored that crucial question, so the district court's certification was reversed.

Likewise, Miller's alleged common questions ignore the crucial questions. These un-asked questions are the real issues, and, like the central contention in *Dukes*, nothing holds the answers to these questions together. For example, determining whether GCU committed fraud or misrepresentation as to Miller does not establish that GCU did so vis-

10

à-vis every putative class member. Indeed, even if Abruzesse misrepresented everything precisely as Miller alleges, that alone sheds no light whatsoever on whether any other advisor misrepresented any other program to any other putative class member.

A class action would not generate common answers to this question or any of Miller's other questions. Each question defies class resolution because they cannot be answered from a single source. *See Gene and Gene*, 541 F.3d at 327–29. Instead, the questions require individualized evidence—what was said, by whom, and when in thousands of conversations between putative class members and numerous advisors—which leads inexorably "to the conclusion that myriad mini-trials cannot be avoided." *Id.* at 329. The result is that Miller failed to establish a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. It follows that Miller fails 23(a)'s commonality requirement.

3. <u>Typicality</u>

Miller, as movant, shoulders the burden to show typicality. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–81 (5th Cir. 2001). Much of the commonality analysis applies equally to typicality because, as the Supreme Court noted, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 350, n. 5. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Bridge v. Credit One*

11

*Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (internal quotations omitted). Although the class representative's claim does not need to be factually identical with the class members, "class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.* Specifically, a defense or counter claim defeats typicality if it is likely to become the litigation's focus. *See, e.g.*, *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–301 (3rd Cir. 2006); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2nd Cir. 1990); *Bridge*, 294 F. Supp. 3d at 1034; *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999) ("Where unique defenses against a named plaintiff exist, the Court must consider the potential danger that the attention to this individual defense might harm the class.").

Here, the Court finds that Miller's claims pose a significant danger of distracting from the putative class generally. *First*, Miller's claims depend on purported misrepresentations made to her, orally, during an individualized conversation regarding her unique circumstances. Miller has not identified any uniform representation or misrepresentation to the proposed class through which to tie her experience to those that others might have had. Indeed, many prospective students will likely have obtained substantially different information about the GCU programs being offered. Moreover, these prospective students' questions to GCU advisors and reliance on the information provided will in all likelihood vary widely. Thus, any injuries sustained by putative class members will differ from those sustained by Miller. *See Castano v. Am. Tobacco Co*., 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified when individual

reliance will be an issue.") (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988) ("[C]lass representatives must 'possess the same interest and suffer the same injury' as the class members[.]" (citation omitted)).

*Second*, Miller is subject to a unique defense that renders her claims atypical and risks making her the major focus of litigation. *See Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 747 (5th Cir. 1984) ("the typicality requirement protects class members from representation by a party who is 'preoccupied with a defense which is applicable only to himself."); *Bridge*, 294 F. Supp. 3d at 1034. Specifically, the controversy surrounding whether Miller left GCU of her own accord or whether she was expelled due to a failed background check leads to a unique dispute as to whether she has standing.

Defendants argue that had Miller completed her degree program, she would have been able to obtain certification in Arizona and then apply for certification in Texas. Resp. at 16–17; Campbell Decl. ¶¶ 16, 17, 23. Instead, her inability to obtain a teacher's license in Texas stemmed from the consequences of her failure to properly disclose her criminal background, not an alleged fraud committed by Defendants. Resp. at 16–17. This, according to Defendants, means that she lacks a particularized injury and therefore lacks standing. *Id*.

This argument mischaracterizes Miller's alleged injury by putting the cart before the horse. Miller does not complain that she would have completed GCU's degree program and obtained certification but for her expulsion; she argues that she was fraudulently induced into pursuing an allegedly worthless degree through entering GCU's degree

13

program. *See generally*, Comp. Thus, Miller has standing because she has a particularized injury (fraudulent inducement) causally connected to Defendants (through Abruzesse's alleged actions) that is redressable through a ruling in her favor. *U.S. v. Hays*, 515 U.S. 737, 742–43 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). That said, the issue of Miller's expulsion nevertheless poisons class certification for the reasons explored in the Court's 23(b)(3) analysis.

For these reasons, the Court holds that Miller's claims and defenses are atypical of the class members' claims and defenses.

4. <u>Adequacy</u>

Miller proves adequacy of representation. To comply with Rule 23(a)(4)'s requirements, the movant must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement is met when: (1) class counsel prosecutes the action zealously and competently; (2) representative parties are willing and able to control the litigation and protect absentee class members' interests; and (3) there are no conflicts of interest between the representative parties and the class members. *See Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017). Rule 23(a)(4)'s adequacy inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

With respect to Rule 23(a)(4), Miller claims that she and her counsel meet the adequacy requirement for the following reasons:

(1) she is fully committed to representing the class;

>   (2) she has no conflicts with the class; and
>
>   (3) her counsel are sophisticated and experienced attorneys that will pursue the action zealously and competently.

Mot. Cert. at 13–14. The Court finds that Miller satisfies the adequacy requirement for the reasons set forth in her brief.

### B. Miller did not prove Rule 23(b)(3)'s requirements

Although Miller failed to satisfy two of Rule 23(a)'s requirements or prove that she had standing, even if she had, she must also satisfy Rule 23(b)(3)'s requirements. She has not. Miller moved to certify under Rule 23(b)(3), which has two requirements:

>   1) "common questions must predominate over any questions affecting only individual members"; and
>
>   2) "class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy."

*Cruson*, 954 F.3d at 252. Miller failed to show that common questions predominate over individualized questions. Accordingly, the Court does not address the superiority element.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 253. "At bottom, the predominance inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Id.* (internal quotations omitted). An individual question, which can derail class certification, is "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-

15

wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotations omitted); *see also Gene and Gene*, 541 F.3d at 326.

This inquiry overlaps with the commonality requirement of Rule 23(a)(2) but is "far more demanding." *Gene and Gene*, 541 F.3d at 326. Like the commonality analysis, the court must "go beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law"; "identify the substantive issues that will control the outcome, assessing which issues will predominate"; and then determine whether those issues are common to the class, or if the class will "degenerate[] into a series of individual trials." *Cruson*, 954 F.3d at 254. And "district courts must only certify class actions . . . when" the plaintiff advances "a viable theory employing generalized proof to establish liability with respect to the class involved." *Gene and Gene*, 541 F.3d at 328.

In this case, individual questions predominate over common questions. These issues prevent a finding of commonality and, for the same reasons, prevent Miller from meeting the "even more demanding" element of predominance. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

This conclusion results from considering what a trial would look like. *Gene and Gene*, 541 F.3d at 326 (stating that the "predominance inquiry requires a court to consider how a trial on the merits would be conducted if a class were certified"). Miller's expulsion and individual interactions with Abruzesse would permeate the trial. More than that, "a fraud class action cannot be certified when individual reliance will be an issue." *Castano*, 84 F.3d at 745; *Newby v. Enron Corp.*, 529 F. Supp. 2d 644, 679 (E.D. Tex. 2006) ("A

district court may not certify a fraud class where individualized proof of reliance must be shown and thus the requirement of predominance of common issues is defeated.").

This case depends upon reliance on non-uniform misrepresentations in the form of oral statements about GCU programs made during conversations with prospective students as opposed to from a uniform "script" or advertisement. Variations as to the degree of reliance by prospective students on statements that may or may not have been made makes class certification improper. *See Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977) ("It is possible, although unlikely, that oral misrepresentations can be uniform, e.g., through use of a standardized sales pitch by all the company's salesmen."). Moreover, reliance will depend on whether a class member even spoke to a GCU enrollment advisor, what they knew beforehand, what they asked, what they learned after, and what they did with that information. The varied and individualized levels of reliance, derived from dynamic conversations, make this case improper for class certification due to the individual issues relating to reliance. *Castano*, 84 F.3d at 745.

Because Miller failed to show that common questions predominate over questions only affecting individual members, she failed to satisfy Rule 23(b)(3). No amount of additional discovery or further rounds of lengthy motions would change this outcome.

**C.     Miller did not prove 23(b)(2)'s requirements**

Finally, Miller attempts to certify the putative class to get an injunction. However, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61 (permitting the combination of individualized and class-wide relief in a (b)(2) class is also

17

inconsistent with the structure of Rule 23(b)"); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) (Rule 23(b)(2) is only available "so long as the predominant relief sought is injunctive or declaratory").

"Rule 23(b)(2) applies only when a single injunction or declaratory relief judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. However, former students at GCU have no need for prospective injunctive relief at all. "As a consequence, even though the validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole,'" *Id.* at 365 (quoting Rule 23(b)(2)), most, if not all, putative class members "have no claim for injunctive relief or declaratory relief at all." *Id.* Thus, the putative class should not be certified under Rule 23(b)(2).

## CONCLUSION

Based on the foregoing, the Court determines that Miller failed to carry her burden under Federal Rule of Civil Procedure 23(a)(2), (a)(3), (b)(2), and (b)(3). Accordingly, the Court finds that the Motion for Class Certification (ECF No. 40) should be and hereby is **DENIED.**

**SO ORDERED** on this **19th day** of **May, 2021.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE